**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                         :
THOMAS J. NORTON,                        :
                                         :
                         Plaintiff,      :
                                         :     Civil Action No. 16-9385 (FLW)
              v.                         :
                                         :          **OPINION**
STOP AND SHOP STORE # 830; AHOLD         :
U.S.A., INC; BARBARA BODNAR;             :
SCOTT TRAEGER; and RICHARD               :
GOLDMAN; et al.,                         :
                                         :
                         Defendants.     :
_____:

**WOLFSON**, **United States District Judge**:

      Plaintiff Thomas J. Norton ("Plaintiff") brings the instant action against Defendants the

Stop and Shop Supermarket Company, LLC ("Stop and Shop"), Ahold U.S.A., Inc. ("Ahold"),

Barbara Bodnar, Scott Traeger, and Richard Goldman (collectively, "Defendants"), asserting six

causes of action arising out of an alleged assault and battery that occurred at the Stop and Shop

location where Plaintiff was employed. Specifically, the Complaint asserts New Jersey statutory

and common law claims for: (1) violation of the New Jersey Conscientious Employee Protection

Act ("CEPA"), N.J.S.A. 34:19-1 _et seq._; (2) breach of the implied covenant of good faith and fair

dealing[1]; (3) intentional and negligent infliction of emotional distress; (4) assault and battery; (5)

---

[1] In his Opposition to Defendants' Motion to Dismiss, Plaintiff voluntarily dismissed his implied covenant claim, asserted in Count Two of the Complaint. Nonetheless, as discussed in Section I(B)(2), _infra_, the removability of a matter is determined at the time of removal, _see Am. Fire & Cas. Co. v. Finn_, 341 U.S. 6, 14 (1951), and because I find that § 301 of the LMRA preempts Plaintiff's implied covenant claim, this Court had original jurisdiction over the instant matter at the time of removal. Nonetheless, because the Court finds, in Sections I(B)(1) & (3), _infra_, that neither Count One nor Count Three of the Complaint are preempted by § 301, and thus, that

negligent supervision and training; and (6) punitive damages.[2]  While the Complaint was initially filed in New Jersey Superior Court, it was subsequently removed to this Court based upon Defendants' assertion that § 301 of the Labor Management Relations Act ("LMRA")[3] preempts Plaintiff's CEPA, implied covenant, and emotional distress claims.

Presently before the Court are Plaintiff's Motion to Remand and Defendants' Partial Motion to Dismiss.  For the reasons that follow, the Court finds that: (1) this Court had federal jurisdiction over the Complaint at the time of removal, because Count Two, Plaintiff's breach of the implied covenant of good faith and fair dealing claim, is preempted by § 301 of the LMRA, and thus, Plaintiff's Motion to Remand is **DENIED**; (2) Plaintiff's implied covenant claim and claim for punitive damages, asserted in Counts Two and Six, respectively, are voluntarily **DISMISSED**; (3) no other claims implicate the LMRA, and thus, there is no existing basis for federal jurisdiction; (4) this Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, and therefore, the Motion to Dismiss is **DENIED** without prejudice as to all other claims; and (5) Plaintiff's remaining claims, asserted in Counts One, Three, Four, and Five, are **REMANDED** to the Superior Court of New Jersey, Ocean County, Law Division for further proceedings.

_____

Count Two was the only claim conferring federal jurisdiction upon this Court, the dismissal of Count Two deprives the Court of its only basis to assert original jurisdiction over this matter.

[2] Count Six of the Complaint purports to assert a claim for punitive damages.  Compl. at ¶¶ 28-29.  However, "because in New Jersey there is no independent cause of action for punitive damages," *California Nat., Inc. v. Nestle Holdings, Inc.*, 631 F. Supp. 465, 474 (D.N.J. 1986), Count Six will be dismissed for failure to state a claim.  Indeed, in his Opposition to Defendants' Partial Motion to Dismiss, Plaintiff concedes that "[t]he sixth count of the complaint serves to notice the defendants that punitive damages are sought and does not purport to state a separate cause of action."  Pl.'s Opp. to Defs.' Mot. to Dismiss.  The Court makes no comment on whether punitive damages are available under Plaintiff's other causes of action.

[3] § 301 of the LMRA is codified at 29 U.S.C. § 185, and thus, for the purposes of this Opinion, § 301 and § 185 will be referenced interchangeably.

## BACKGROUND

As both the Motion to Remand and Motion to Dismiss concern the same set of facts, the Court will recount the relevant facts pertaining to both Motions. This matter arises out of an alleged assault and battery, occurring between two employees of Stop and Shop. Plaintiff is a current part-time employee of Stop and Shop, and was employed by Stop and Shop at the time of the alleged assault. Compl. ¶ 1. Plaintiff is a member of, and is represented by, the United Food and Commercial Workers International Union, Local 1262 (the "Union."), which serves as the exclusive bargaining agent for certain Stop and Shop employees. Not. of Removal ¶ 11. The terms and conditions of Plaintiff's employment are governed by a collective bargaining agreement existing between the Union and Stop and Shop (the "Collective Bargaining Agreement" or "CBA"). *Id.* at ¶ 12.

Plaintiff alleges that on September 3, 2016, he was physically battered and verbally assaulted by one of his co-employees, Richard Goldman. Compl. at ¶ 2. Plaintiff avers that the incident was captured on surveillance video, which depicts Goldman both striking Plaintiff in the face several times and verbally assaulting Plaintiff. *Id.* at ¶ 3. Plaintiff further alleges that the surveillance video is in the possession of Defendants Stop and Shop and Ahold. *Id.* at ¶ 3.

According to the Complaint, Plaintiff immediately reported the assault to his supervisor, Barbara Bodnar, who, in turn, reported the assault to her supervisor, Scott Traeger. *Id.* at ¶ 4. Plaintiff alleges that at the time of the alleged assault, Bodnar and Traeger were aware that Goldman had prior "problems with other employees." *Id.* at ¶ 5. Plaintiff further alleges that following the assault, Defendants continued to employee Goldman at the same store as Plaintiff, scheduling the two during overlapping hours. *Id.*

On November 17, 2016, Plaintiff filed his Complaint in the Superior Court of New Jersey, Ocean County, Law Division, alleging various state law claims against Defendants. Count One asserts that Defendants retaliated against Plaintiff for reporting the assault, in violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 *et seq.*, by reducing Plaintiff's hours from five or six shifts per week to one shift per week, failing to adequately investigate his report, refusing to produce surveillance video of the assault, and verbally harassing Plaintiff about the assault. Compl. ¶¶ 6-12. Count Two asserts a claim against Stop and Shop and Ahold for breach of the implied covenant of good faith and fair dealing. *Id.* at ¶¶ 16-19. Count Three asserts a claim against Defendants for intentional and negligent infliction of emotional distress. *Id.* at ¶¶ 20-22. Count Four asserts a claim for assault and battery against Defendants Goldman, Stop and Shop, and Ahold. *Id.* at 23-24. Finally, Count Five asserts a claim against Stop and Shop and Ahold for negligent supervision and training of Goldman. *Id.* at ¶¶ 25-27.

Defendants removed the case to this Court on December 19, 2016, maintaining that Counts One through Three of Plaintiff's Complaint require interpretation of the CBA between the Union and Stop and Shop, and thus, are preempted by the § 301 of the LMRA, which gives rise to this Court's jurisdiction to adjudicate the instant dispute. On January 6, 2017, Defendants filed a Partial Motion to Dismiss Plaintiff's Complaint. ECF No. 6. On January 12, 2017, Plaintiff filed a Motion to Remand the present action to state court. ECF No. 12. Both Motions have been fully briefed. ECF Nos. 9, 11, 13.

## DISCUSSION

## I. Motion to Remand

### A. Legal Standard

Because this Court's jurisdiction is a threshold matter, I turn to the Motion to Remand first. Remand is governed by 28 U.S.C. § 1447(c), which provides that removed cases must be remanded if, "at any time before final judgment it appears that the district court lacks subject matter jurisdiction" over the case. 28 U.S.C. § 1447(c). The removability of a matter is determined from the plaintiff's pleadings at the time of removal. *See Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 14 (1951). When the propriety of removal is challenged, the party asserting federal jurisdiction bears the burden of showing that removal is proper. *See Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007). "Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts should be resolved in favor of remand." *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985).

In its Notice of Removal, Defendants argue that the Court has federal question jurisdiction under 28 U.S.C. § 1331. Pursuant to § 1331, district courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Accordingly, in order to assess Plaintiff's Motion to Remand, the Court must determine whether Defendants have met their burden of establishing the existence of federal question jurisdiction.

**B.      Federal Preemption Under the LMRA**

On this Motion to Remand, the Court must decide whether § 301 LMRA mandates federal preemption of state claims brought by Plaintiff, a collective bargaining unit member. Defendants contend that Plaintiff's CEPA claim, as well as his claims for breach of the implied covenant of good faith and fair dealing and intentional or negligent infliction of emotional distress, require interpretation of the CBA, and thus, are preempted by § 301. The Court agrees

that the breach of the implied covenant of good faith and fair dealing claim is preempted by §

301, but disagrees as to the other claims.

The existence of federal question jurisdiction in removal cases is governed by the "well-

pleaded complaint rule." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). "Ordinarily,

under the well-pleaded complaint rule, in order to be removable, federal jurisdiction must be

pleaded in a plaintiff's complaint." *Johnson v. NBC Universal, Inc.*, 409 F. App'x 529, 531 (3d

Cir. 2010). Thus, courts generally examine "the 'well pleaded' allegations of the complaint and

ignore potential defenses." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003); *see*

*Caterpillar*, 482 U.S. at 393 ("[A] case may not be removed to federal court on the basis of a

federal defense . . . .").

However, the Supreme Court has held that the doctrine of complete preemption creates

an exception to the well-pleaded complaint rule. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207

(2004). "As a 'corollary of the well-pleaded complaint rule,' complete pre-emption recognizes

'that Congress may so completely pre-empt a particular area that any civil complaint raising this

select group of claims is necessarily federal in character.'" *Pascack Valley Hosp. v. Local 464A*

*UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 399 (3d Cir. 2004) (quoting *Metro. Life Ins.*

*Co. v. Taylor*, 481 U.S. 58, 63-64 (1987)). Thus, "[o]nce an area of state law has been

completely pre-empted, any claim purportedly based on that pre-empted state law is considered,

from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S.

at 393; *see Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S.*

*California*, 463 U.S. 1, 24 (1983) ("[I]f a federal cause of action completely preempts a state

cause of action any complaint that comes within the scope of the federal cause of action

necessarily 'arises under' federal law.").

It is well-settled that § 301 of the LMRA is subject to the complete preemption doctrine.

*See Johnson*, 409 F. App'x at 531.  Section 301 provides as follows:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  In its application, § 301 "provides for federal jurisdiction over disputes regarding collective bargaining agreements, and mandates the application of uniform federal law to resolve such disputes."  *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 228 (3d Cir. 1995).  In other words, "[w]hen a suit stating a claim under section 301 is brought, state contract law is displaced, and the collective agreement is interpreted under this federal common law."  *Berda v. CBS Inc.*, 881 F.2d 20, 22 (3d Cir. 1989).  The Supreme Court has construed the preemptive force of § 301 as being so powerful that it "not only pre-empt[s] state law but also authorize[s] removal of actions that [seek] relief only under state law."  *Anderson*, 539 U.S. at 6–7.  Indeed, the Court has explained the preemptive force of § 301 as follows:

> The Court of Appeals held, and we affirmed, that the petitioner's action 'arose under' § 301, and thus could be removed to federal court, although the petitioner had undoubtedly pleaded an adequate claim for relief under the state law of contracts and had sought a remedy available only under state law. The necessary ground of decision was that the preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301. *Avco* stands for the proposition that if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law.

*Franchise Tax Bd. of State of Cal.*, 463 U.S. at 23–24.

The boundaries of § 301 preemption have been addressed at length, both in the jurisprudence of the Supreme Court and within the Third Circuit.  The Supreme Court first analyzed the preemptive effect of § 301 in *Local 174, Teamsters, Chauffeurs, Warehousemen &*

*Helpers of Am. v. Lucas Flour Co.*, 369 U.S. 95 (1962). In *Lucas Flour*, the Court held that "the

dimensions of § 301 require the conclusion that substantive principles of federal labor law must

be paramount in the area covered by the statute." *Id.* at 103. In finding that claims implicating §

301 must be interpreted under uniform federal law, the Court explained:

> [T]he subject matter of s 301(a) 'is peculiarly one that calls for uniform law.' The
> possibility that individual contract terms might have different meanings under state and
> federal law would inevitably exert a disruptive influence upon both the negotiation and
> administration of collective agreements. Because neither party could be certain of the
> rights which it had obtained or conceded, the process of negotiating an agreement would
> be made immeasurably more difficult by the necessity of trying to formulate contract
> provisions in such a way as to contain the same meaning under two or more systems of
> law which might someday be invoked in enforcing the contract.

*Id.* (internal citations omitted). Put differently, § 301 mandates "resort to federal rules of law in

order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote

the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Div. of*

*Magic Chef, Inc.*, 486 U.S. 399, 404 (1988).

In *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985), the Supreme Court extended the

reach of § 301 preemption beyond suits alleging contract violations to suits alleging liability in

tort. *Id.* at 211. In that case, the plaintiff brought a state tort claim against his employer for the

bad-faith processing of an insurance claim. In holding that § 301 extends to certain tort claims,

the Court reasoned that "[a]ny other result would elevate form over substance and allow parties

to evade the requirements of § 301 by relabeling their contract claims as claims for tortious

breach of contract." *Id.* at 211. Therefore, the Court adopted the following standard for

determining whether a state law claim is completely preempted by § 301: "When resolution of a

state-law claim is *substantially dependent* upon analysis of the terms of an agreement made

between the parties in a labor contract, that claim must either be treated as a § 301 claim or

dismissed as pre-empted by federal labor-contract law." *Id.* at 220 (citation omitted) (emphasis

added). Applying that rule, the Court concluded that the plaintiff's cause of action was completely preempted by § 301, because "the duties imposed and rights established through the state tort . . . derive from the rights and obligations established by the [collective-bargaining] contract," and resolution of the dispute would therefore "inevitably . . . involve contract interpretation." *Id.* at 217–18.

However, the Supreme Court has clarified that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." *Lueck*, 471 U.S. at 211. To that end, the Court noted that "it would be inconsistent with congressional intent under [§ 301] to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id.* at 212. Thus, to determine whether § 301 preemption applies, the *Lueck* Court directed courts to focus on whether the plaintiff's cause of action asserts "nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the [state] claim is *inextricably intertwined* with consideration of the terms of the labor contract." *Id.* at 213 (emphasis added).

The Supreme Court next considered § 301 preemption in *Caterpillar*, where it considered whether employees, who were covered under a collective bargaining agreement, were preempted under § 301 from bringing state law claims for breach of individual oral contracts made with their employer prior to the collective bargaining agreement. 482 U.S. at 388. After reiterating that § 301 "governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective bargaining agreement," the Supreme Court held that the employees' state law claims for breach of their

individual employment contracts were not preempted.  *Id.* at 394 (internal quotation marks

omitted).  Specifically, the Court reasoned:

> Section 301 says nothing about the content or validity of individual employment
> contracts. It is true that respondents, bargaining unit members at the time of the plant
> closing, possessed substantial rights under the collective agreement, and could have
> brought suit under § 301. As masters of the complaint, however, they chose not to do so.
>
> Moreover, . . . respondents' complaint is not substantially dependent upon interpretation
> of the collective-bargaining agreement. It does not rely upon the collective agreement
> indirectly, nor does it address the relationship between the individual contracts and the
> collective agreement.

*Id.* at 394–95.  The Third Circuit has interpreted *Caterpillar* as standing for the proposition that

"employees have the option of vindicating their interests by means of either a section 301 action

or an action brought under state law, as long as the state-law action as pleaded does not require

interpretation of the collective bargaining agreement."  *Voilas v. Gen. Motors Corp.*, 170 F.3d

367, 373-74 (3d Cir. 1999) (citing *Caterpillar*, 482 U.S. at 394–95).

The Supreme Court further elucidated the principles governing § 301 preemption in

*Lingle,* where it considered whether § 301 preempted an employee's state law retaliatory

discharge claim against her employer.  Although the employee was subject to a collective

bargaining agreement in that case, which provided a contractual remedy for discharge without

cause, the Court found that § 301 preemption did not apply.  486 U.S. at 407.  The Court focused

first upon the elements of a retaliatory discharge claim under the relevant state law – (1)

discharge or a threat of discharge; and (2) a motive to deter the employee from exercising her

rights – and found that neither of those elements required the Court to interpret any term of the

collective bargaining agreement.  *Id.* at 407.  Rather, the Court found that each of those elements

raised "purely factual questions pertain[ing] to the conduct of the employee and the conduct and

motivation of the employer."  *Id.* at 407.  Thus, the Court held that the employee's state law

claim was "independent" of the relevant collective-bargaining agreement for purposes of § 301 because "resolution of the state-law claim did not require construing the collective bargaining agreement." *Id.*

In so holding, the *Lingle* Court noted that although the employee's state law claims "might well involve attention to the same factual considerations as the contractual determination of whether Lingle was fired for just cause" under the collective bargaining agreement, "such parallelism" did not render the "state-law analysis dependent upon the contractual analysis." *Id.* at 408. Specifically, the Court reasoned:

> 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements. In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

*Id.* 409–10.

The Supreme Court also addressed § 301 preemption in *Livadas v. Bradshaw*, 512 U.S. 107 (1994), where it considered whether § 301 preempted the plaintiff's state law claim to recover statutory penalties arising from her former employer's late payment of wages. In summarizing its prior jurisprudence and the relevant standards governing § 301, the Court explained that the reach of § 301's preemptive force only extends so far as "to assure that the purposes animating § 301 will be frustrated neither by state laws purporting to determine questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, nor by parties' efforts to renege on their arbitration promises by 'relabeling' as tort suits actions simply alleging breaches of duties

assumed in collective-bargaining agreements." *Id.* at 122-23 (internal quotations and citations omitted). Indeed, the Court emphasized the following limitations regarding § 301:

> In *Lueck* and in *Lingle* . . . we underscored the point that § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law, and we stressed that it is the legal character of a claim, as "independent" of rights under the collective-bargaining agreement (and not whether a grievance arising from "precisely the same set of facts" could be pursued) that decides whether a state cause of action may go forward. Finally, we were clear that when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.

*Id.* at 123-24 (internal citations and footnotes omitted).

Applying those principles, the *Livadas* Court held that § 301 did not preempt the plaintiff's state law claims, reasoning that "[t]he only issue raised by Livadas's claim, whether Safeway 'willfully fail[ed] to pay' her wages promptly upon severance, was a question of state law, entirely independent of any understanding embodied in the collective-bargaining agreement between the union and the employer." *Id.* at 124-25 (internal citation omitted). In explaining that the plaintiff's claims did not substantially depend on an interpretation of the collective bargaining agreement at issue, the Court noted that there was no dispute in that case over the amount of the penalty to which the plaintiff was entitled. *Id.* at 125. Moreover, the Court emphasized that the mere need to reference the collective bargaining agreement was insufficient to find that the plaintiff's state law claims were preempted by § 301. *Id.* ("*Lingle* makes plain in so many words that when liability is governed by independent state law, the mere need to 'look to' the collective-bargaining agreement for damages computation is no reason to hold the state-law claim defeated by § 301.").

In several decisions, the Third Circuit has extensively reviewed the Supreme Court's jurisprudence regarding complete preemption of state law claims under § 301 of the LMRA. *See, e.g., Kline v. Sec. Guards, Inc.,* 386 F.3d 246, 251–54 (3d Cir. 2004); *Voilas,* 170 F.3d at

373–76; *Trans Penn Wax Corp.*, 50 F.3d at 228–30; *Berda,* 881 F.2d at 22–25.  Based on the principles set forth by the Supreme Court, the Third Circuit has explained that "[o]nly state law claims 'inextricably intertwined with considerations of the terms of the labor contract' are preempted by [LMRA]." *Malia v. RCA Corp.,* 794 F.2d 909, 912 (3d Cir. 1986).  Stated another way, § 301 "completely preempts a state cause of action *only* when the resolution of said action is '*substantially dependent* upon analysis of the terms of an agreement made between the parties in a labor contract.'"  *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 305 (3d Cir. 2014) (quoting *Lueck*, 471 U.S. at 220) (emphasis added).  By contrast, "when resolution of the state law claim is 'independent' of a CBA and does not require construing one, the state law claim is not preempted by § 301." *New Jersey Carpenters*, 760 F.3d at 305–06 (citation omitted).  With this background, the Court turns to Plaintiff's individual claims for:  (1) violation of CEPA; (2) breach of the implied covenant of good faith and fair dealing; and (3) intentional or negligent infliction of emotional distress, to determine whether the resolution of those claims substantially depends on the CBA.

### 1.    Count One – Retaliation Pursuant to CEPA

CEPA "is remedial legislation that protects an employee from employer retaliation in cases where the employee 'blows the whistle' on illegal or unethical activity."  *Reynolds v. TCM Sweeping, Inc.*, 340 F. Supp. 2d 541, 545 (D.N.J. 2004) (citing *Hernandez v. Montville Twp. Bd. of Educ.*, 354 N.J. Super. 467, 808 A.2d 128 (2002)).  To establish a cause of action under CEPA, a plaintiff must demonstrate that:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;
>
> (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3c;
>
> (3) an adverse employment action was taken against him or her; and

(4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

*Dzwonar v. McDevitt*, 177 N.J. 451, 462 (2003); *see Lippman v. Ethicon, Inc.*, 222 N.J. 362, 380 (2015).  Here, Plaintiff alleges that Defendants retaliated against him for reporting the alleged assault by assigning him fewer work shifts, failing to adequately investigate his report, refusing to produce surveillance video of the assault, and verbally harassing Plaintiff about the assault. Compl. ¶¶ 6-12.  The critical inquiry for the Court in determining whether Plaintiff's CEPA claim is preempted by § 301 is whether resolution of Plaintiff's CEPA claim is substantially dependent on an interpretation of the CBA, such that the claim can be characterized as inextricably intertwined with the CBA.  Upon examination of the elements of CEPA, the Court finds that Plaintiff's CEPA claim does not substantially depend on an interpretation of the CBA.

Guided by the decisions of the Supreme Court and the Third Circuit, various courts in this District have held that CEPA claims are separate and distinct from the terms of labor contracts, and thus, are not preempted by § 301.  *See, e.g.*, *Manos v. United Food & Commercial Workers Int'l Union*, 9 F. Supp. 3d 473, 481 (D.N.J. 2014) (holding that the plaintiff's CEPA claim was not subject to complete preemption under § 301, because it required examination of the factual circumstances of the parties' conduct and motivations, rather than an interpretation of the CBA); *Reynolds*, 340 F. Supp. 2d at 549 ("[T]his Court finds that Plaintiff's CEPA claim is not preempted by § 301."); *Patterson v. Exxon Mobil Corp.*, 262 F. Supp. 2d 453, 461–62 (D.N.J. 2003) ("Resolution of plaintiff's CEPA claim in this case . . . is not substantially dependent upon analysis of the terms of the CBA because plaintiff's claims stem from his entitlement to rights under state law, not the collective bargaining agreement."); *see also Simoni v. Diamond*, No. 10-6798, 2017 WL 82470, at *6 (D.N.J. Jan. 9, 2017) (holding that § 301 did

not preempt the plaintiff's CEPA claim, because "[i]n order to adjudicate the CEPA claim, one must determine what happened between the parties, and their motivations as opposed to an interpretation of the contract."); *Carluccio v. Parsons Inspection & Maint. Corp.*, No. 06-4354, 2007 WL 1231758, at *5 (D.N.J. Apr. 24, 2007) (finding that Plaintiff's CEPA claim was "independent of any collective bargaining agreement," because it "primarily involve[d] the examination of the parties' actions and motivations, not the interpretation of a collective bargaining agreement."). Taken together, those cases make clear that, typically, where an employee brings a CEPA claim against his employer, alleging retaliation for whistleblowing activities, that claim requires a factual inquiry into the parties' conduct and motivations, rather than an interpretation of the labor contract at issue, and thus, complete preemption under § 301 of the LMRA does not apply. *See Reynolds*, 340 F. Supp. 2d at 548 ("CEPA claims . . . require a factual inquiry in applying the four prong test."). Defendants fail to identify any case holding otherwise.

In *Patterson*, for example, an employee brought a CEPA claim against his employer, alleging that the employer retaliated against him for reporting that the employer had passed over a more qualified minority candidate in favor of a less qualified non-minority candidate. 262 F. Supp. 2d at 456. The collective bargaining agreement at issue contained a clause indicating that "awards to positions will be made on the basis of qualifications for the position." *Id.* at 459. The court held that § 301 did not preempt the plaintiff's CEPA claim, because "[l]ike *Lingle*, resolution of the elements of plaintiff's CEPA claim, for the most part, requires examination of the actions of plaintiff and actions and motivations of defendants, and does not rely upon interpretation of the CBA." *Id.* at 458. In that regard, the court explained that while the first prong of the plaintiff's CEPA claim – whether the plaintiff reasonably believed his employer's

conduct was violating a law – might require reference to the collective bargaining agreement, the "CEPA claim as a whole is not reliant solely upon the CBA." *Id.* at 459.

In so holding, the *Patterson* court rejected the defendants' argument that "consideration of plaintiff's allegations of adverse employment action taken against him requires interpretation of the CBA because he alleges that defendants denied him a host of rights under the CBA." *Id.* In that regard, the court found that despite the defendants' claim that the "qualifications" for promotional advancement were defined in the collective bargaining agreement, they were neither explained nor listed. *See id.* at 459. In fact, the court found that while the defendant had developed an extensive procedure to address which employees within the unit were best qualified to receive a promotion or job transfer to a more favorable position within that unit, that procedure was not set forth in the collective bargaining agreement. *Id.*

Moreover, despite the fact that the agreement contained provisions defining how shifts would be assigned, including clauses pertaining to "Seniority," "Holidays," "Overtime," and "Schedules," the court found that the plaintiff's claim that he was retaliated against by being scheduled to work on holidays was not inextricably intertwined with the collective bargaining agreement. *See id.* at 460-61. To that end, the court noted that "[a]lthough there may be incidental reference to the CBA to determine what the 'holidays' are, such reference is only for definitional purposes and the CBA does not supply a rule of decision." *Id.* at 460. As such, the court ultimately held the plaintiff's CEPA claim was not preempted by § 301, "because a violation of the CBA does not form the basis of Plaintiff's action nor is the Court called upon to interpret the CBA in order to reach the merits of Plaintiff's claims." *Id.* at 455.

Similarly, in *Reynolds*, a unionized employee brought a CEPA claim against his employer, alleging that he was harassed, intimidated, and eventually fired for reporting that he

was not being paid the correct wage, in violation of both the Davis-Bacon Act and the collective bargaining agreement at issue. The court noted that the "key inquiry" in determining whether the employee's claim was preempted by § 301 was "whether an examination of the complaint requires a factual inquiry into the actions and motivations of the parties relative to rights conferred by state law or relative to the rights of the parties under the collective bargaining agreement." *Reynolds*, 340 F. Supp. 2d at 546–47. Relying on *Patterson*, the court held that the employee's claim was not preempted by § 301, because it was "not inextricably intertwined with the CBA." *Id.* at 547. In that regard, the court reasoned that although the employee referenced the collective bargaining agreement in articulating his claims, the "true essence" of his claim – whether the employer in fact retaliated against him in violation of CEPA – did not require an interpretation of that agreement. *Id.* at 548. Rather, resolution of Plaintiff's claims required a factual inquiry in to the motivations of the parties relevant to the rights under CEPA.

Here, as in *Patterson* and *Reynolds,* I find that resolution of Plaintiff's CEPA claim will primarily involve factual questions pertaining to the actions and motivations of Defendants, rather than an interpretation of the CBA. With regard to the first factor, whether or not Plaintiff reasonably believed Defendants' conduct was violating a rule or law, Defendants argue that Plaintiff's claims implicate Articles 5, 7, 13, and 14 of the CBA, entitled "Regular Work Week and Maximum Hours," "Wage Clause," "Seniority," and "Grievance Procedure and Arbitration," respectively. At the outset, the Court notes that Defendants fail to identify any specific clause within those provisions that must be interpreted in order to resolve Plaintiff's claim.[4] Nor, as

---

[4] The Third Circuit has explained that "[a] finding of § 301 preemption is not mandated simply by the contention that [a plaintiff's] state law claims 'necessarily implicate' the CBA." *Kline*, 386 F.3d at 256. Rather, the Circuit has adopted the following standard, set forth in *Cramer v. Consolidated Freightways Inc.,* 255 F.3d 683 (9th Cir. 2001), for determining whether a

explained below, can I, in conducting my own review of the CBA, find that resolution of Plaintiff's CEPA claim substantially depends on an interpretation of the provisions cited by Defendants.

While the Court acknowledges that, as in *Patterson* and *Reynolds*, the first element of CEPA may implicate the provisions of the CBA dealing with shift assignment and reduction of hours generally, the Supreme Court has explained that mere reference to the CBA does not render a plaintiff's claims substantially dependent on, or inextricably intertwined with, the CBA. S*ee Livadas,* 512 U.S. at 124. Here, given the nature of Plaintiff's CEPA claim as it relates to the CBA, the Court finds that Defendants' preemption argument fails as a matter of law. First, Article 5 of the CBA, pertaining to shift assignments, merely sets forth the work week and maximum hours for full-time and part-time employees. While Plaintiff alleges that Defendants reduced his work shifts as a result of Plaintiff's whistleblowing, Plaintiff does not allege that Defendants violated the CBA in doing so. Rather, the principle issue in resolving Plaintiff's retaliation claim is the motivation of Defendants; *i.e.*, whether Defendants reduced Plaintiff's shifts in retaliation for his reporting of the assault. While a court may reference the CBA, insofar

---

defendant has met his or her burden of demonstrating that a state law claim is inextricably intertwined with a labor contract:

> [A]lleging a hypothetical connection between the [state law] claim and the terms of the CBA is not enough to preempt the claim: adjudication of the claim must require interpretation of a provision of the CBA. A creative linkage between the subject matter of the claim and the wording of a CBA provision is insufficient; rather, the proffered interpretation argument must reach a reasonable level of credibility. *Cf. Livadas,* 512 U.S. at 124–25. The argument does not become credible simply because the court may have to consult the CBA to evaluate it; "look[ing] to" the CBA merely to discern that none of its terms is reasonably in dispute does not require preemption. *Id.* at 125.

*Kline,* 386 F.3d at 256–57 (quoting *Cramer,* 255 F.3d at 691).

as it sheds light on whether Defendants in fact reduced Plaintiff's shifts, resolution of Plaintiff's claim does not substantially depend on an interpretation of that provision.

Similarly, the Court need not interpret either Article 7 or Article 13 to resolve Plaintiff's CEPA claim. Defendants maintain that Articles 7 and 13 govern when the hours of part-time employees, including Plaintiff, may be reduced. Article 7 governs the wage scale to which full-time and part-time employees are entitled. The only clause that this Court can discern in Article 7 that relates to reduction of work for part-time employees, such as Plaintiff, provides that "no employee shall suffer a reduction in the employee's earnings as a result of any of the provisions of this Agreement, nor shall part-time employees' hours of work be reduced as a result of this Agreement except for economic reasons such as a reduction in business." Certification of Heather Weine Brochin ("Brochin Cert.") Ex. 2, at 24. Article 13 provides that, where there is a reduction of hours, "[n]o employee shall have hours reduced until there has been a reduction of hours among less senior employees," and states that part-time employees are entitled to notice prior to the reduction. *Id.* at 26-27. No interpretation of these provisions is necessary for the purpose of assessing Plaintiff's CEPA claim.

To the extent Plaintiff's claims for shift reduction may require references to, or considerations of, Articles 7 and 13, mere reference to the CBA does not render Plaintiff's claim "inextricably intertwined" with the CBA.[5] *see Lueck*, 471 U.S. at 211 ("[N]ot every dispute

---

[5] Indeed, if mere reference to the CBA were sufficient to trigger § 301 preemption, all claims for unlawful retaliation brought by unionized employees would be preempted, because the starting point for every case would be the labor agreement. While the line between "reference to" and "interpretation of" a labor agreement may be hazy, *see Cramer*, 255 F.3d at 691 ("The demarcation between preempted claims and those that survive § 301's reach is not, however, a line that lends itself to analytical precision."), merely referencing a labor contract does not implicate the national interest in uniform interpretation of labor contracts that underlies § 301 preemption. *See Lucas Flour*, 369 U.S. at 103. Here, resolution of Plaintiff's claim for

concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law.").  In that regard, while Articles 7 and 13 relate broadly to a reduction in hours, the Court is unable to discern any rule of decision governing when Defendants may reduce an employee's hours.  Stated another way, while the CBA may define *how* a reduction in hours can occur, it appears that *when* such a reduction can occur is left to the discretion of Defendants; *e.g.*, nowhere does the CBA define what constitutes "economic reasons such as a reduction in business."  Moreover, Plaintiff does not challenge the meaning of the provisions of the CBA relating to reduction of hours, or otherwise allege that Defendants violated the CBA's protocol for shift reductions.[6]  Rather, Plaintiff's state law claim for retaliation focuses primarily on Defendants' motivation for reducing his shifts, a question that requires minimal consultation of the CBA.  *See Livadas*, 512 U.S. at 124 ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.").  Those factual questions may be resolved without interpreting the CBA.

Moreover, Plaintiff's claim for unlawful retaliation is not based solely on a reduction in shifts.  Rather, Plaintiff also alleges that Defendants refused to produce surveillance video of the assault, and verbally harassed Plaintiff following the assault.  Those claims involve purely factual questions concerning Defendants' conduct and motivations, without need to reference the CBA.

---

retaliation under state law would not undermine the policy of resolving labor disputes uniformly under federal law.
[6] Plaintiff does not allege, for example, that Defendants violated the seniority provision in the CBA by reducing his hours without first reducing the hours of a junior employee.

Furthermore, Plaintiff's CEPA claim does not implicate the grievance and arbitration procedure contained in Article 14 of the CBA. Article 14 provides, in pertinent part, that "[a]ll disputes, differences or grievances *as to the interpretation or application of the provisions* of this agreement shall be settled" in the manner set forth in that provision. Brochin Cert. Ex. 2, at 28 (emphasis added). Here, as discussed above, Plaintiff's allegation that Defendants retaliated against him by reducing his shifts is grounded in state law, rather than the provisions of the CBA. Moreover, with respect to Plaintiff's claim that Defendants failed to properly investigate his report, the CBA is devoid of any reference to the procedure that Defendants must follow in the event of a whistleblower claim, and thus, Plaintiff's claim need not be brought through the grievance and arbitration process. *See Manos*, 9 F. Supp. 3d at 481 (finding that the plaintiff's CEPA claim was not preempted by § 301, where his "right to relief as a whistleblower . . . does not concern an inquiry into the terms of the CBA, which is devoid of provisions regarding whistleblowers and retaliation protection."). In that regard, Plaintiff does not allege in his CEPA claim that Defendants failed to adhere to a provision in the CBA dealing with an employee's complaint of misconduct by another employee. Additionally, even assuming Plaintiff could have obtained some relief through the grievance process, "that alone is not conclusive evidence of preemption," because "CEPA grants rights independent of the CBA, and the remedies which might be obtained in a successful grievance under a CBA are not necessarily the same as those available under a successful [CEPA] claim." *Reynolds*, 340 F. Supp. 2d at 548. Accordingly, the first prong of Plaintiff's CEPA claim does not substantially depend on an interpretation of the CBA.

The second and third prongs of a CEPA claim require Plaintiff to demonstrate that he performed a whistleblowing activity and that an adverse employment action was taken against

him.  The Court's analysis of these factors is not substantially dependent on an interpretation of the CBA; the CBA does not define what constitutes a whistleblowing activity, and whether or not an adverse employment action was taken against Plaintiff is a factual question concerning Defendants' conduct and motivations.  Indeed, Plaintiff does not allege that Defendants' actions "were improper because they violated or conformed with the CBA."  *Reynolds*, 340 F. Supp. 2d at 548–49.  Thus, neither the second nor the third prong of Plaintiff's CEPA claim hinges upon an interpretation of the CBA.

Finally, the fourth prong of Plaintiff's CEPA claim requires him to demonstrate a causal connection between the whistleblowing activity and the adverse employment action. As with the other prongs, the Court's examination of the fourth prong will focus primarily on the parties' conduct and motivations.  In that regard, the Court will analyze Plaintiff's reporting of the alleged assault, Defendants' response to that report, and whether or not that response can be deemed retaliatory.  The CBA will not be implicated in making those determinations.

In sum, resolution of Plaintiff's CEPA claim turns on the factual events that transpired between Plaintiff and Defendants (*i.e.*, Defendants' motivation for reducing Plaintiff's shifts, responding to the report, failing to produce the surveillance video, and verbally harassing Plaintiff), rather than any specific provision in the CBA.  Plaintiff has not directly alleged a violation of the CBA and it does not appear, from the face of Plaintiff's Complaint, that his claims are founded upon rights contained in the CBA; rather, in alleging that Defendants retaliated against him for whistleblowing, Plaintiff asserts claims grounded in his substantive rights under state law.  Thus, in resolving Plaintiff's CEPA claim, the Court is tasked only with determining whether Defendants retaliated against Plaintiff for reporting the alleged assault, not with whether Defendants violated the CBA.  That the Court may consult the CBA in resolving

those issues is inapposite. Because Plaintiff's does not challenge the meaning of terms contained in the CBA, or otherwise raise a labor dispute, analysis of Plaintiff's claims under state law would not disrupt the policy of having labor disputes interpreted uniformly under federal law. Accordingly, the Court finds that Plaintiff's CEPA claim is not "inextricably intertwined" with the CBA, and thus, is not preempted by § 301 of the LMRA.

### 2. Count Two – Breach of the Implied Covenant of Good Faith and Fair Dealing

Count Two of the Complaint asserts a state law claim for breach of the implied covenant of good faith and fair dealing. Specifically, the Complaint alleges that Defendants Stop and Shop and Ahold were "bound to operate in good faith and fairly deal with their employees," yet breached that contractual duty "when they wrongfully failed to investigate the accident, provide surveillance film depicting plaintiff's assault, . . . reduced his hours . . . [and] failed to discipline . . . Goldman." Compl. ¶¶ 17-18. "A covenant of good faith and fair dealing is implied in every contract in New Jersey." *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (2001). That is, every contract in New Jersey contains an implied covenant that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Palisades Properties, Inc. v. Brunetti*, 44 N.J. 117, 130 (1965) (citation omitted). In this case, Defendants argue that because the only contract in existence between Plaintiff and Defendants is the CBA, the CBA must be interpreted to resolve Plaintiff's implied covenant claim, and thus, that claim is preempted by § 301 of the LMRA. The Court agrees.

First, while Plaintiff, in his Opposition to Defendants' Partial Motion to Dismiss, voluntarily withdrew his claim for breach of the implied covenant of good faith and fair dealing, asserted in Count Two, that does not resolve the issue of whether this case was properly removed, and thus, whether this Court has jurisdiction. Federal jurisdiction for the purposes of

removal is determined by looking to the complaint at the time of removal, and is not based upon some subsequent act. *Granovsky v. Pfizer, Inc.*, 631 F. Supp. 2d 554, 559 (D.N.J. 2009) (In "[r]uling on whether an action should be remanded to the state court from which it was removed, a district court must focus on the plaintiff's complaint at the time the petition for removal was filed."). Therefore, I must still determine whether Count Two provides a basis for federal jurisdiction.

Here, Plaintiff has failed to identify any contract other than the CBA from which his implied covenant claim derives. Because the right asserted by Plaintiff "not only derives from the [CBA], but is defined by the contractual obligation of good faith, any attempt to assess liability here inevitably will involve contract interpretation." *Lueck*, 471 U.S. at 218. In other words, Plaintiff's express reliance upon the CBA to assert his claim for breach of the implied covenant of good faith and fair dealing requires this Court analyze Plaintiff's contractual obligations with Defendants under that labor contract. *See Manos*, 9 F. Supp. 3d at 480 (holding that the plaintiff's claim for breach of the implied covenant of good faith was preempted by § 301, where the plaintiff's reliance on the parties' collective bargaining agreement "require[d] a court to inquire into the terms of the CBA regarding the Defendants' contractual obligations with Plaintiff."). Thus, Plaintiff's implied covenant claim is inextricably intertwined with the CBA, mandating preemption under § 301, granting this Court subject matter jurisdiction of the Complaint, and making removal proper.

### 3. *Count Three – Intentional or Negligent Infliction of Emotional Distress*

Defendants also maintain that resolution of Plaintiff's claims for intentional or negligent infliction of emotional distress require an analysis of the CBA.[7]  I disagree.

To prevail on a claim for intentional infliction of emotional distress under New Jersey law, a plaintiff must prove that:  (1) the defendant acted "intentionally or recklessly"; (2) the defendant's conduct was "extreme and outrageous"; (3) the defendant's conduct was "proximate cause of plaintiff's emotional distress"; and (4) "the emotional distress suffered by plaintiff must be so severe that no reasonable [person] could be expected to endure it."  *Ingraham v. Ortho-McNeil Pharm.*, 422 N.J. Super. 12, 19–20 (App. Div. 2011) (quoting *Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 366-67 (1988)) (internal quotation marks omitted).  "The severity of the emotional distress raises questions of both law and fact.  Thus, the court decides whether as a matter of law such emotional distress can be found, and the jury decides whether it has in fact been proved."  *Buckley*, 111 N.J. at 367.

Comparatively, a plaintiff must show the following four elements to prevail on a claim for negligent infliction of emotional distress under New Jersey law:  "(1) the defendant's negligence caused the death of, or serious physical injury to, another; (2) the plaintiff shared a marital or intimate, familial relationship with the injured person; (3) the plaintiff had a sensory and contemporaneous observation of the death or injury at the scene of the accident; and (4) the plaintiff suffered severe emotional distress."  *Jablonowska v. Suther*, 195 N.J. 91, 103 (2008).

The Court cannot find that either Plaintiff's claim for intentional infliction of emotional distress or for negligent infliction of emotional distress substantially depends on an interpretation

---

[7] Tellingly, Defendants' argument that Count Three implicates the CBA is confined to a single statement in the introduction to their Opposition to Plaintiff's Motion to Remand, without any further analysis of how resolution of Plaintiff's claims for intentional or negligent infliction of emotional distress would require interpretation of the CBA.

of the CBA. Rather, resolution of Plaintiff's claims for emotional distress will focus on whether Plaintiff suffered emotional distress as a result of Defendants' alleged conduct in reducing Plaintiff's shifts, failing to adequately investigate his report, refusing to produce surveillance video of the assault, and verbally harassing Plaintiff about the assault. As recognized above, that inquiry raises factual questions regarding Defendants' conduct and motivations, as well as Plaintiff's response, and thus, does not substantially depend on an interpretation of the CBA. *See Trans Penn Wax Corp.*, 50 F.3d at 232 (finding that the plaintiff's intentional infliction of emotional distress claim was not preempted by § 301, where that claim was contingent upon an analysis of the defendant's "conduct while inducing the employees to enter into the "Guarantee" agreement and on the employees' response. This factual inquiry does not implicate any analysis of terms or rights created by the collective bargaining agreement."). Accordingly, Plaintiff's claims for intentional and negligent infliction of emotional distress do not implicate the CBA, and therefore, are not preempted by § 301.

In sum, the Court finds that while Count Two of the Complaint, asserting a claim for breach of the implied covenant of good faith and fair dealing, is preempted by § 301, neither Plaintiff's CEPA claim nor his emotional distress claims, asserted in Counts One and Three, respectively, substantially depend on an interpretation of the CBA. Nonetheless, because this Court had original jurisdiction over Plaintiff's implied covenant claim at the time of removal, I find that removal was proper on the basis of that claim alone. Therefore, Plaintiff's Motion to Remand, based upon improper removal, is denied.

## II.     Motion to Dismiss and Supplemental Jurisdiction

Defendants move to dismiss all Counts of the Complaint, with the exception of Count Four as against individual Defendant Goldman. However, in light of the dismissal of Count Two

– the sole claim giving rise to this Court's original jurisdiction over the instant matter – the Court must determine whether it should exercise supplemental jurisdiction over Plaintiff's remaining claims prior to ruling on the Motion to Dismiss. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388-89 (3d Cir. 2002) (federal courts have a duty to "examine their subject matter jurisdiction at all stages of the litigation *sua sponte* if the parties fail to raise the issue. That obligation extends to removal cases, as well as to those originally filed in the district courts."); *see also* FED. R. CIV. P. 12(h)(3).  For the following reasons, I decline to exercise supplemental jurisdiction, and therefore, I need not reach the merits of Defendants' Partial Motion to Dismiss as it pertains to Plaintiff's remaining state law claims.

"Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted).  Under § 1367(c), "district courts may decline to exercise supplemental jurisdiction over a claim under subsection . . . if . . .  the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc. v. Delaware Cty., Pa.*, 983 F.2d 1277, 1284 (3d Cir. 1993) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

The Third Circuit has explained that, absent compelling circumstances, the court should decline to exercise supplemental jurisdiction where the claim over which the district court has original jurisdiction has been dismissed prior to trial.  *See Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000); *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).  Thus,

where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *United Mine Workers*, 383 U.S. at 726; *Growth Horizons, Inc.*, 983 F.2d at 1284–1285.

Here, Plaintiff having withdrawn the sole federal claim, and this Court accordingly dismissing that claim, I decline to exercise supplemental jurisdiction, particularly since this case is in its infancy. *See*, *e.g.*, *Monk v. New Jersey*, No. 14–1399, 2014 WL 4931309, at *3 (D.N.J. Oct. 2, 2014) ("Where a case has been removed from state court to federal court on the basis of federal question jurisdiction, the United States Supreme Court has recognized that a district court retains the discretion to remand that matter back to state court when all federal law claims have been dropped or dismissed from the action and only pendant state law claims remain."). Accordingly, Defendants' Partial Motion to Dismiss Plaintiff's state law claims – with the exception of the claims asserted in Counts Two and Six – is denied without prejudice, and this matter is remanded to state court, where Defendants may raise any remaining issues.[8]

## CONCLUSION

For the foregoing reasons, the Court finds that Count Two, the breach of the implied covenant of good faith and fair dealing claim, is preempted by § 301 of the LMRA, and therefore, removal of this action was proper and Plaintiff's Motion to Remand is DENIED on that basis. Counts Two and Six of the Complaint are voluntarily dismissed, and, because the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims,

---

[8] On remand, this Court's legal analysis pertaining to federal preemption should not be construed in any way as commenting upon or deciding the merits of Plaintiff's claims; instead, all claims asserted in Plaintiff's Complaint – with the exception of Counts Two and Six – are remanded to New Jersey Superior Court for further proceedings.

the Motion to Dismiss is DENIED without prejudice as to all other Counts.  This case is

remanded to New Jersey Superior Court, Ocean County, Law Division for further proceedings.

Dated:  August 22, 2017                                    /s/ Freda L. Wolfson
                                                           Hon. Freda L. Wolfson
                                                           United States District Judge